Tim WHITE, Plaintiff–Appellant,

v.

SAN MATEO COUNTY, Defendant–Appellee.

No. 01–16382.

D.C. No. CV–98–2737–VRW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 2002.

Decided June 7, 2002.

Before HUG and BERZON, Circuit Judges, and LASNIK,* District Judge.

## MEMORANDUM **

Tim White seeks overtime compensation and liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for hours in excess of forty per week spent grooming, feeding, walking, transporting, and otherwise caring for his police dog. Appellee San Mateo County argues that White is an exempt "executive" employee under the FLSA.

White and other officers in the San Mateo County Sheriff's Office canine unit filed a complaint seeking overtime compensation. After extending the discovery period to allow the officers an opportunity to investigate the County's executive exemption defense, the district court found that (1) time spent caring for and transporting police dogs is compensable and (2) White could not recover overtime wages because he was exempt.[1]

White filed a timely notice of appeal challenging the district court's finding that he was exempt and the dismissal of his overtime wage claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

From 1995 to January 1997, White was employed as a patrol sergeant by San Mateo County. In 1997, he was transferred to the San Mateo County Jail as a supervisor in charge of housing. During the same period, White "oversaw" the San Mateo County Sheriff's Office canine unit and was

---

* Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. All of the other officers settled their FLSA claims prior to oral argument.

in charge of the unit's training activities. While serving in the canine unit, White boarded his dog at home. White's police dog was retired on June 1, 1999.

## STANDARD OF REVIEW

Whether White's compensation and daily activities excluded him from overtime benefits under the FLSA is a question of law reviewed *de novo*. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). How White was compensated and spent his working time are questions of fact reviewed under the clearly erroneous standard. *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1068 (9th Cir.1990); *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1453 (9th Cir.1988). Because White is appealing a summary judgment against him, we view the evidence under the same standard used by the district court and must determine whether, viewing the evidence in the light most favorable to appellant, there are any genuine issues of material fact. *Webster v. Public Sch. Employees of Wash., Inc.*, 247 F.3d 910, 912 n. 1, 913 (9th Cir.2001).

## DISCUSSION

The FLSA requires that employers ordinarily pay their employees time and one-half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). The Act provides an exemption from overtime for persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). In order to satisfy the overtime exemption for executive employees, an employer must satisfy a two-part test promulgated by the Department of Labor ("DOL"). "Specifically, and for our purposes, the [employee] must (1) be paid on a salary basis (2) of not less than $250 per week (3) for the primary duty of managing a recognized department or subdivision and (4) regularly direct two

or more employees." *Barner v. City of Novato*, 17 F.3d 1256, 1260 (9th Cir.1994). The first two elements of the test are called the "salary test" and the second two make up the "duties test." An employee is entitled to overtime pay if the employer cannot satisfy both tests. *Service Employees Int'l Union v. County of San Diego*, 60 F.3d 1346, 1350 (9th Cir.1994).

Both the salary and the duties test are at issue in this case. The salary test provides that an employee must be compensated on a genuine salary basis to qualify as an executive subject to the overtime exemption. An employee is compensated on a salary basis only if his compensation is not subject to reduction based on the "quality or quantity of the work performed." 29 C.F.R. § 541.118(a). In 1991 and 1992, the DOL recognized that the salary test conflicted with many state and local statutes prohibiting government employees from being paid for time not actually worked. In August 1992, the DOL amended the salary test for public-sector employees to allow salary reductions for less-than-a-day absences without a loss of the exemption. 29 C.F.R. § 541.5d.

■ There is no evidence in the record from which a reasonable factfinder could conclude that White was paid on anything but a salary basis. Although the documents which established White's compensation package do not expressly guarantee that White would be paid on a salary, rather than an hourly, basis, such an agreement is implied and supported by the testimony of knowledgeable County employees, the record evidence, and the conduct of the parties. The fact that the County requires its exempt employees to use accrued personal or sick leave for absences of less than one day does not invalidate the exemption. 29 C.F.R. § 541.5d.

White insists, however, that the absence of an express promise or guarantee that he would always be paid his salary prevents

the County from establishing that the payments he received were made "under his employment agreement" as required by 29 C.F.R. § 541.118(a). This argument turns on a novel, and somewhat strained, interpretation of the regulations. The salary test requires that the employee be compensated "on a salary basis at a rate of not less than $250 per week...." 29 C.F.R. § 541.1(f). The DOL has elaborated on this requirement by stating that an employee is considered to be paid a salary "if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation...." 29 C.F.R. § 541.118(a). White's argument that an express written or oral agreement is required by the phrase "employment agreement" is not supported by the language of the regulations or the case law; the regulations require only that an agreement to compensate the employee on a salary basis exist, and they do not preclude the possibility that the agreement is implied and/or established by extrinsic evidence. In addition, requiring an express guarantee that White's salary would never be reduced as a result of missed work is contrary to the public accountability doctrine incorporated into § 541.5d, which clearly contemplates that a public-sector employee can be placed on leave without pay in certain specified circumstances (such as when permission to use accrued leave was not obtained before the absence or accrued leave has been exhausted).

The district court held that "the [C]ounty has provided evidence sufficient to demonstrate that White's biweekly compensation qualifies as 'salary' under the regulations." With the exception of White's conclusory statement that the wages he received were not "salary," White has offered no evidence which contradicts the County's showing or the district court's conclusion.

With regards to the duties test, White argues that he did not run a division of San Mateo County, making the executive exemption inapplicable. The test established in the regulations and *Barner* simply requires that the employee have as his primary duty the management of "a recognized department or subdivision." 17 F.3d at 1260. White's deposition testimony establishes that he directed the daily activities of numerous deputies and that he managed the units to which he was assigned. In response to a broad question about what he did as a patrol sergeant, White responded:

> I oversaw the daily activities of the patrol officers. I was in charge of the vehicle—patrol vehicles. I was part of and oversaw the K–9 explosive detection team. I was in charge of the training for the entire K–9 unit. I was in charge of the—I was the lead hostage negotiator, and in charge of the hostage negotiation team.

His response to a similar question regarding his duties as a jail housing supervisor was, "I oversee the day-to-day housing responsibilities of the inmates. I see that [the deputies] carry out their job according to the rules and regulations of the sheriff's office and the jail operation rules." White's follow-up testimony shows that he possessed and exercised discretion in the performance of his duties and in the direction of his subordinates. His subsequent declaration, which attempts to identify all the areas in which he did not have absolute authority and all the tasks that he performed which did not involve the exercise of discretion, does not change the fact that his primary duty was to manage and operate the patrol, canine, hostage-negotiation, and jail units to which he was assigned.

The district court's finding that, as a matter of law, White's "duties were primarily managerial," he "supervised numer-

ous employees," and his "overall responsibilities were supervisorial" are supported by the record.

Because White was an exempt employee, he has not established a violation of the overtime provisions of the FLSA and is, therefore, not entitled to liquidated damages under 29 U.S.C. § 260 or the application of a three-year limitations period under 29 U.S.C. § 255.

## CONCLUSION

The district court correctly found that, under both the salary and the duties test, White was a managerial employee exempt from the overtime provisions of the FLSA. Absent a statutory violation, White was not entitled to liquidated damages or an extension of the limitations period, making dismissal of those claims appropriate.

AFFIRMED.